JOSEPH FROST, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 73712.   Promulgated January 25, 1938.

*B. L. Rawlins, Jr., Esq.*, for the petitioner.
*E. G. Smith, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $1,533.36 in the petitioner's income tax for the year 1930. The only issue here is the correctness of the method used by the Commissioner in computing gain or loss upon the repossession by the petitioner of six pieces of real estate in the taxable year, as to which he had entered into contracts to sell in prior years on the deferred payment plan. The facts have been stipulated.

The petitioner was engaged in business in Chicago, Illinois, in the construction and sale of residences during the taxable year and for some years prior to that time. He sold his properties on a deferred payment basis. Each purchaser made a cash payment of a portion of the agreed purchase price, assumed the mortgage, if any, and agreed to make subsequent cash payments at stated intervals. The petitioner retained title until the cash payments approximated the cash cost of the property to the petitioner, at which time he would transfer title to the purchaser and receive a purchase money second mortgage as security for the unpaid balance of the purchase price. No note or evidence of indebtedness, other than the contract of sale, was given by the purchaser prior to his receipt of title. None of the obligations evidenced by such contracts of sale were sold by the petitioner and only in rare instances were purchase money second mortgages, when taken, discounted and sold by the petitioner.

Six properties which had been the subject of sales contracts executed in prior years, and with respect to which the purchasers were in default under their contracts of purchase, were repossessed by the petitioner during the taxable year. The stipulation shows the original cost of each of these properties to the petitioner, the sale price, the

payments made by the purchaser, and the fair market value of the property at the time repossessed by the petitioner.

The petitioner at the date of repossession had not transferred legal title to five of these properties. Title to the sixth had been conveyed and a second mortgage taken.

No part of the cash payments received by the petitioner in years prior to 1930 on four of the properties in question was reported as profit from those transactions on his income tax returns for those years. He reported a small profit on the other two, but not on the installment basis. He assigned no value to the contracts of purchase obligating the purchasers to pay and did not choose to use the installment basis of reporting his income from the transactions.[1] The method chosen by the taxpayer in those years was a proper choice under the statutes and was not questioned by the Commissioner. The theory of it was that the payments were first to offset the petitioner's bases for gain or loss, four of the transactions had, so far, not resulted in any gain, and as they were not yet completed, gain or loss would depend upon future events which would bring the transactions to a close.

The petitioner contends that he realized no gain from repossessing the properties because the cash he received reduced but did not exceed his bases and he now has the properties with reduced bases for gain or loss upon future dispositions. The Commissioner has computed the deficiency in accordance with the second paragraph

---

[1] SEC. 44. INSTALLMENT BASIS.

(a) *Dealers in personal property.*—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

(b) *Sales of realty and casual sales of personalty.*—In the case * * * (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 40 per centum of the selling price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

*     *     *     *     *     *     *

(d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

of article 354 of Regulations 74,[2] but he made claim for an increased deficiency upon the ground that section 44 (d) applies.

Since the petitioner never chose to use the installment basis of reporting his income from these transactions, and since the use of that method is not obligatory, he can not be taxed upon repossessions as if he had chosen that method. *Max Viault*, 36 B. T. A. 430. Section 44 (d) applies and was intended to apply only in case the installment basis has been used by the taxpayer. The contracts of sale which the petitioner had were not installment obligations within the meaning and intendment of section 44 (d), since he was not using the installment basis, and there would be no good reason to characterize them as installment obligations. The section was enacted as a part of the 1928 Act to prevent evasion under the installment method of reporting income[3] and was not intended to apply where some other unrelated method of reporting had been used. There would be absolutely no justification for applying it in this case.

The method used by the Commissioner in determining the deficiency was in accordance with the law. The payments forfeited on properties as to which title had not passed were properly included in income of the year in which the forfeiture occurred, to the

[2] ART. 354. *Deferred-payment sale of real property not on installment plan.*—In transactions included in class (2) in article 352, the obligations of the purchaser received by the vendor are to be considered as the equivalent of cash to the amount of their fair market value in ascertaining the profit or loss from the transaction.

If the vendor had retained title to the property and the purchaser defaults in any of his payments, and the vendor repossesses the property by agreement or process of law, the difference between (1) the entire amount of the payments actually received on the contract and retained by the vendor and (2) the sum of the profits previously returned as income in connection therewith and an amount representing proper adjustment for exhaustion, wear and tear, obsolescence. amortization. and depletion of the property while in the hands of the purchaser, will constitute gain or loss, as the case may be, to the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the sale. If the vendor had previously transferred title to the purchaser, and the purchaser defaults in any of his payments and the vendor reacquires the property, such repossession shall be regarded as a transfer by the vendor, in exchange for the property, of such of the purchaser's obligations as are applied by the vendor to the purchase or bid price of the property. Such an exchange will be regarded as having resulted in the realization by the vendor of gain or loss, as the case may be, for the year of repossession, measured by the difference between the fair market value of the property and the basis in the hands of the vendor of the obligations of the purchaser (generally, the fair market value thereof which was previously recognized in computing income) which were applied by the vendor to the purchase or bid price of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the vendor in the absence of clear and convincing proof to the contrary. If the property so acquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold, and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount being the difference between the reduced basis as provided above and the amount realized therefor. Only in rare and extraordinary cases does property have no fair market value.

[3] See House Report No. 2, 70th Cong., 1st sess., pp. 14–16; Senate Report No. 960, 70th Cong., 1st sess., pp. 22–24.

extent that they had not been reported as income previously. *Calvin T. Graves*, 17 B. T. A. 1318. The gain on the repossession of the sixth property was computed in accordance with the decision in *Henry Heldt*, 16 B. T. A. 1035. See also *Nat Webb, Jr.*, 22 B. T. A. 1249; *Laurens Trust Co.*, 3 B. T. A. 331; *Home State Bank*, 15 B. T. A. 121; *Title & Trust Co.*, 33 B. T. A. 25. The case of *Boca Ratone Co.* v. *Commissioner*, 86 Fed. (2d) 9, reversing 31 B. T. A. 1060, is distinguishable because there the installment basis had been selected and used by the taxpayer, in accordance with its rights under the statute.

The amounts expended by the petitioner in reconditioning some of the properties after repossession are deductible as ordinary and necessary expenses of the petitioner's business, since the parties are agreed that they did not result in improvements, the cost of which should be capitalized.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TYSON dissents.

———

LEECH, dissenting: The petitioner sold certain pieces of property. In years prior to the taxable year he received payments on account, which, in the case of each sale, amounted to less than his cost of the property sold. Petitioner treated these payments as recoveries of capital on the ground that the obligations of the purchasers to make such payments had no fair market value. The majority opinion formally approves this treatment which had, in fact, been approved by the Commissioner. In the taxable year the petitioner repossessed each property in satisfaction of the unpaid purchase price. The question is the gain or loss sustained by the petitioner on such repossession.

The majority opinion holds that in computing gain or loss upon repossession there is a material distinction between those cases in which the taxpayer has sold the property on a deferred payment basis and retained the legal title as security for the future payment, and where he has conveyed legal title and retains a mortgage conveyance for the same purpose. As to the basis for such distinction the opinion is silent.

I can conceive of no theory upon which such a distinction can be justified. In both cases the result to the seller is identical. The loss or gain realized is in fact the same. Both are cases of sales of property. I can not accept a theory under which the taxpayer, merely through the mechanics he has employed to secure payment of the purchase price, will realize a taxable gain, in the event the property is repossessed, but would be held to have sustained a deductible loss

in the same transaction, if he used slightly different mechanics to do the same thing.

For purposes of illustration let us assume that the taxpayer here owned two lots which cost him $5,000 each and which he sold to the same purchaser on the same day for $10,000 each. On each lot the purchaser made a cash payment of $2,000 and agreed to pay the balance in equal periodic installments. In the sale of one lot the taxpayer executed a deed and took back a purchase money mortgage. In the sale of the other, the parties executed a contract under which it was agreed that the taxpayer would retain legal title until the final payment was made. In both cases the taxpayer treated the cash payments as recoveries of capital, as was done in the case at bar. Let us assume further that the purchaser defaults in the following year and his offer to reconvey, to the taxpayer, his interest in the two lots for the surrender of his notes is accepted, and this is done. The lots have each a fair market value of $2,000 as of the date of repossession.

So far as the taxpayer is concerned, the result in each case is, in fact, the same and yet the application of the theory of the majority opinion would require an entirely different computation. In the case of the lot upon which the taxpayer had taken back a purchase money mortgage, the rule recognized in *Henry Heldt*, 16 B. T. A. 1035, and other similar cases cited in the majority opinion would be applied and the taxpayer would be held to have sustained a deductible loss of $1,000. This would be the excess of his basis, which is $5,000, less $2,000 recovered in the cash payments made, or $3,000, over the $2,000 fair market value of the property at the time repossessed. In the sale of the other lot, identical in all respects except for the fact that the seller used a slightly different method for securing the payment of the deferred installments, our decision of some years back in *Calvin T. Graves*, 17 B. T. A. 1318, would be invoked. The fair market value of the property repossessed would be disregarded and the taxpayer would be held to have realized a taxable gain of $2,000, composed of the payments on account which were "forfeited" to him on repossession.

In the recent case of *Boca Ratone Co.* v. *Commissioner*, 86 Fed. (2d) 9, reversing 31 B. T. A. 1060, even though the respondent's regulations had approved it, the court specifically rejected this very distinction upon which the majority opinion is predicated. In this opinion the court states:

\* \* \* Taxation is a practical matter. The reasoning of the Board in an effort to justify the distinction made in the Regulations is too technical, refined, and legalistic. The Regulations as to this distinction exceed the provisions of the Statute and are invalid. If there is any doubt about this, it should be resolved in favor of the petitioner. *Gould* v. *Gould*, 245 U. S. 151,

153, 38 S. Ct. 53, 62 L. Ed. 211; *Crocker* v. *Malley*, 249 U. S. 223, 253, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; *United States* v. *Field*, 255 U. S. 257, 262, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461.

The decision of the Third Circuit in *Boca Ratone Co.* v. *Commissioner*, *supra*, has been accepted and followed by us in the recent case of *Eggerman Investment Co.*, 36 B. T. A. 1196. It is directly in point here. The majority opinion attempts to distinguish this case with the mere statement that there the taxpayer had elected to return his gain on the installment basis. This is a distinction without a difference. The principle announced by the court is in no wise affected or controlled by the method used by the taxpayer in reporting the income realized on the sale. It is evidently overlooked that section 44 affects, only, the year in which the income from a given transaction is to be taxed. Its application does not increase or decrease the amount of the gain realized. The gain or loss upon repossession of property, where payments made have been reported upon the installment basis, is the same amount as in cases where that basis has not been used except for the reduction of the amount of gain or the increase of the amount of loss by the sum of that portion of prior payments which had been included in income.

I think that the gain realized in all of the pending transactions should be computed in accordance with the rule laid down in *Henry Heldt*, *supra*, and similar cases cited in the majority opinion. Section 44 (d) applies that rule in cases where the income realized prior to the repossession had been returned upon the installment basis. It is my opinion that this method of computation should be used in both the classes of sales here and gives the actual gain realized. The method the majority opinion applies to five of the pending transactions and which disregards, as an element in the computation of gain or repossession, the fair market value of the property repossessed, is erroneous.