Omah MacDonald v. Commissioner.
MacDonald v. Commissioner
Docket No. 16677.
United States Tax Court
1949 Tax Ct. Memo LEXIS 252; 8 T.C.M. (CCH) 212; T.C.M. (RIA) 49053; February 28, 1949
*252 Petitioner was proprietor of Badcock's Economy Furniture Store which bought and sold at retail new and secondhand furniture on the cash and installment basis, principally the latter. Badcock's kept its books on the cash receipts and disbursements basis, upon which basis petitioner reported that income. The respondent determined that the accrual method of accounting with the use of an inventory more accurately reflected Badcock's annual net income, and determined deficiencies accordingly. Held, respondent's determination was a proper exercise of the discretion which the statute lodged with him under such circumstances. James A. Taylor, Esq., Harvey Bldg., West Palm Beach, Fla., and William E. Keen, C.P.A., West Palm Beach, Fla., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves an income tax deficiency for the calendar year 1943 in the amount of $7,483.69. On account of the forgiveness feature of the Current Tax Payment Act, petitioner's 1942 tax liability is also involved. The sole contested issue is whether the respondent erred in determining that the income from Badcock's Economy Furniture Store should be computed on the accrual basis and through the use of inventories. The case was submitted on a statement of facts, oral testimony and exhibits. The facts as stipulated are so found. Facts found that were not stipulated are found from the evidence. Findings of Fact Petitioner is a resident of West Palm Beach, Florida. Her income tax returns for *254 1942 and 1943 were filed with the collector of internal revenue for the district of Florida. Petitioner was licensed as a "free dealer" under the laws of the State of Florida. Petitioner's income tax returns for all years were filed on the calendar year basis, on a cash receipts and disbursements method of accounting. In 1942 and 1943, petitioner was owner and manager of two stores. One store was known as Badcock's Economy Furniture Store (hereinafter referred to as "Badcock's") and the other as Maple Leaf Furniture Company (hereinafter referred to as "Maple Leaf"). Both stores were engaged in the retail furniture business. Each bought and sold new and used furniture, but dealt principally in secondhand articles. The new furniture was bought direct from the manufacturers. The secondhand articles were purchased from individuals and were not bought through wholesalers or secondhand dealers. Neither store at any time engaged in the manufacture of furniture. The two stores were unincorporated, were operated as separate businesses, and maintained independent accounting records. The net income for each store was disclosed by petitioner on her 1942 and 1943 income tax returns on the cash *255 and calendar year basis. No change in the method of determining the net income of Badcock's or Maple Leaf, or in the basis of filing petitioner's returns, has ever been sought by petitioner. Respondent has redetermined the net income of each of the stores for the years 1942 and 1943 under the accrual method, thereby increasing the net income of both stores for 1942 and 1943 in the amounts of $14,471.34 and $2,714.26, respectively, and has added these increases to petitioner's net income for 1942 and 1943. The adjustments made by respondent to petitioner's net income on account of his redeterminations of the net income of Maple Leaf are not in controversy. With respect to Badcock's, the respondent's determination established the following balance sheet accounts: 1-1-42
12-31-42
12-31-43
Accounts Receivable
None
$9,530.34
$12,980.20
Merchandise Inventory
None
4,379.97
4,157.98
Accounts Payable
None
752.59
452.50
The determination of the net income of Badcock's on the accrual basis results in an increase in petitioner's 1942 net income, as shown on her return, of $12,264.07, determined as follows: Unreported sales
$9,530.34
Merchandise Inventory
4,379.97
Error in R. A. Report
.55
$13,910.86
Less: Accounts payable
$ 752.59
Allowance for bad
debts
894.20
1,646.79
$12,264.07
*256 The determination of the net income of Badcock's on the accrual basis results in an increase in petitioner's 1943 net income, as shown by her return, of $2,055.77, determined as follows: Unreported sales
$3,449.86
Decrease in accounts payable
300.09
$3,749.95
Less: Decrease in inventory
$ 221.99
Allowance for bad debts
1,472.19
1,694.18
$2,055.77
Badcock's had complied with the Florida Fictitious Names Statute. It was started in 1934 and since that time its income for Federal income tax purposes was reported on a cash receipts and disbursements basis. Prior to May 2, 1938, petitioner had been associated with her father in the business as an employee and had become familiar with all operational and accounting details of the business. Petitioner acquired Badcock's on May 2, 1938 from her father. After May 2, 1938, the business was conducted in precisely the same manner as prior to that date. Badcock's sold merchandise both for cash and on credit. The credit sales were made on the installment basis. For the period 1938 to 1943, inclusive, the average ratio of installment transactions to total sales was 77.746 per cent. Badcock's purchases of used *257 or secondhand merchandise were made for cash. As a general rule, the purchase price of new merchandise was paid by check. Although not paid immediately on receipt, invoices for new merchandise were usually paid within the cash discount period which varied from 10 to 30 days. Unpaid invoices were maintained in a file until withdrawn for payment. Semiannually the outstanding balance of unpaid invoices was recorded in the inventory record book. In preparing petitioner's income tax returns for the years 1938 to 1943, inclusive, the accountant, Keen, computed Badcock's annual net income by the cash receipts and disbursements method from information obtained from the daily cash books and monthly summary cash book. The daily cash books and the monthly summary cash book contained the entire record of cash transactions. Badcock's at no time maintained a general ledger or any form of double entry system. In addition to its daily cash and monthly summary cash books, Badcock's maintained certain memoranda records, which comprised memoranda record book of installments receivable, contract memoranda record, inventory memoranda record and monthly summaries of cash and installment records. The memoranda *258 record books of installments receivable reflected the outstanding balances at the end of each month of installments receivable. A card was kept in a "live" loose leaf file until the transaction it represented was collected or until positive it was uncollectible. When an amount was determined to be uncollectible, its card was filed in a "dead" file. The live file consisted of a list of current installments receivable, and the dead file was maintained solely for reference purposes. In addition to settlement by payment, a card would be removed from the live file and placed in the dead file when a customer voluntarily returned the merchandise; merchandise was repossessed on account of default in payment; a customer left the city without notice or return of the merchandise; the account was assumed by another customer; an order was cancelled and a small deposit forfeited; a balance was discounted for cash; or, the transaction was terminated through default and replevin of the merchandise. No record of the transfer of an account to the dead file was reflected anywhere. Installments receivable reflected in Badcock's memoranda record of installments at the close of each of the years 1938 *259 to 1943, inclusive, were as follows: 1938
$16,610.39
1939
16,786.57
1940
24,115.24
1941
16,632.19
1942
9,530.34
1943
12,980.20
The amounts of $9,530.34 and $12,980.20, representing installments receivable as of the close of 1942 and 1943, respectively, are the amounts which the respondent determined represent Badcock's accounts receivable at the close of those years and as "unreported sales." The respondent has not considered, for purpose of his redetermination of Badcock's net income for 1942, the value at the close of 1941, reflected in Badcock's memoranda record of installments receivable, in the amount of $16,632.19, or any other amount. Badcock's memoranda records of installments receivable were maintained to show the balance owed by customers so that Badcock's could determine whether they could carry larger accounts receivable. These memoranda records were the only records maintained by Badcock's of its installment transactions; they were not reflected in any other accounting records. The sales reflected by the balance of unpaid installment accounts shown in the memoranda record of installment accounts receivable were not used by petitioner in computing *260 her net income. The contract memoranda book recorded the customer's name, contract number, and the gross amount of the purchase. It was maintained to facilitate posting, and the items it contained were not reflected in any other Badcock's record. Inventory records were maintained for Badcock's. A list of merchandise on hand was compiled semiannually. Records were maintained from which petitioner could determine the cost of the merchandise shown on the inventory list. In arriving at the total value of all merchandise on hand, as reflected in the semiannual inventories, petitioner listed some articles at cost and others at their value at the date of the inventory. Inventories reflected in Badcock's inventory memoranda record at the close of the years 1938 to 1943, inclusive, were as follows: 1938
$2,983.62
1939
2,669.47
1940
3,056.37
1941
2,745.56
1942
4,379.97
1943
4,157.98
The amounts of $4,379.97 and $4,157.98 are identical with and are the amounts which the respondent has determined to constitute balance sheet accounts at the close of 1942 and 1943, respectively, and which he used in determining Badcock's net income for those years. The respondent *261 has not considered, for the purpose of his determination of Badcock's net income for 1942, the value at the close of 1941, reflected in the inventory memoranda, in the amount of $2,745.56, or any other amount. These inventory memoranda were maintained for purposes of state inventory tax, insurance and credit purposes. The main reason was to know how well balanced supplies of stocks were, what stocks to increase, which stocks were selling, and which to push. It was principally a check on condition. The inventory memoranda would not have been maintained except for the purposes stated. The inventory items were not reflected in any other of Badcock's records and were not used in determining its net income. The monthly summary of cash and installment records constituted a chart of the monthly installment sales, monthly cash sales and the monthly collections. It was maintained for petitioner's personal use, to show the condition of the business and for comparative purposes. Installment sales were made by Badcock's under an agreement reading as follows: "'Badcock's Will Treat You Right' "BADCOCK'S ECONOMY FURNITURE STORE
"526 Clematis Street W. Palm Beach Phone 4832 , 194
*262 "Delivered To "Address "Post Office * * *
"That I have this day purchased of the Badcock's Economy Furniture Store, the following property to wit: Stock
Valua-
Statement of Goods
No.
tion
"I acknowledge receipt of the above merchandise in good order. "Have Customer Sign Here If Add. Sale "For which I agree to pay Badcock's Economy Furniture Store, $ payable $ cash and balance at the rate of $ per , which property has been received in good order and which I agree to keep at above address. The title of said property shall remain in the said Badcock's Economy Furniture Store, or their Successors until the amount of purchase money shall have been paid, and in case of my failure to make any payment when due, then the whole unpaid balance shall become due and payable at once, and the said Badcock's Economy Furniture Store, shall have the right to like possession of said property at once without any legal process, and all payments made shall be applied as rent for said property or for depreciation in value. "I further agree that any additional purchases made by me of the said Badcock's Economy Furniture Store, during the time this contract *263 is in effect or prior to the time it is paid in full are made on the same conditions and shall become a part of this agreement and should it become necessary to enforce this agreement by legal process, I agree to pay all costs of same and a reasonable attorney's fee. "WITNESS: "Sign Name Not Initials "SIGNED "Have Customer Sign Here If New Or New Add. Sale." In determining Badcock's net income for 1942 and 1943, the respondent determined, at the close of 1942 and 1943, accounts receivable, merchandise inventory, accounts payable and allowance for bad debts. The amounts determined by the respondent as accounts receivable at the close of 1942 and 1943, in the respective amounts of $9,530.34 and $12,980.20, are identical with and are the totals at the end of each year of installments receivable as reflected in Badcock's memoranda book of installments receivable. The amounts determined by the respondent to represent inventories at the close of 1942 and 1943, in the respective amounts of $4,379.97 and $4,157.98, are identical with and are the inventory values at the close of 1942 and 1943 which appear in Badcock's inventory memoranda records. Accounts payable determined by the *264 respondent at the close of 1942 and 1943, in the respective amounts of $752.59 and $452.50, appear in summaries in Badcock's inventory memoranda records and nowhere else. These amounts represent amounts owed for purchases not yet due. The summaries were prepared by petitioner to determine if the business had increased or decreased. They serve no other purpose and were not used in determining net income. In determining the increase in petitioner's net income for 1942 and 1943 from Badcock's, the respondent allowed the sums of $894.20 and $1,472.19, respectively, as a deduction for bad debts. A comparative statement, covering the period May 1, 1938 to December 31, 1943, shows Badcock's net income, determined under the cash and accrual methods, was as follows: Cash
Accrual
Year
Basis
Basis
5/1/38 to 12/31/38
$ 1,452.18
$ 4,654.43
1939
5,251.33
5,137.91
1940
4,056.43
10,513.08
1941
9,581.97
3,270.78
1942
11,101.64
6,133.82
1943
7,961.09
11,489.05
The annual net income of Badcock's for each of the years 1938 to 1943, inclusive, computed under the cash method, is determined from Badcock's daily cash books and summary cash book. The annual *265 net income of Badcock's for each of the years 1938 to 1943, inclusive, computed under the method used by the respondent, is determined by the use of the identical sources used by the respondent in determining Badcock's net income for 1942 and 1943, except that no allowance for bad debts for any year is included, there being no basis for such determination. Petitioner, from time to time, filed with various banks, Dun & Bradstreet, and other similar organizations, statements for credit purposes on which the balances of installment accounts receivable were valued at 50 per cent. As of January 1, 1942, Badcock's records show the following balances: Installment accounts receivable
$16,632.32
Merchandise inventory
2,745.56
Accounts payable (invoices)
1,252.29
Opinion The question presented involves the propriety of the respondent's determination that the income from Badcock's Economy Furniture Store should be computed on the accrual basis and through the use of inventories. The income of Badcock's since the start of the business in 1934 was reported for Federal income tax purposes on the cash receipts and disbursements method of accounting. It is well settled that *266 a taxpayer may make his return on the cash or accrual basis in accordance with the method of accounting regularly employed in keeping his books, if the method clearly reflects income. [1] It is equally well established that if the method adopted by the taxpayer does not clearly reflect income, respondent has a wide discretion to require a method which does reflect true income. Both the taxpayer and the respondent are to be governed by the mandate of the statute. *267 Badcock's operated a retail furniture store. While it bought and sold new and secondhand furniture, it dealt principally in the latter. Its sales, other than for cash, were made on an installment basis under a written conditional sales contract which provided for repossession in case of default. Since Badcock's did not use the installment basis of reporting its income, section 44 (d) of the Internal Revenue Code is not here involved. Cf. Joseph Frost, 37 B.T.A. 190, 192. The books of account used by Badcock's for the purpose of determining its annual net income were its daily cash books and monthly summary cash books. Badcock's at no time maintained a general ledger or any form of double entry system. It also maintained certain independent memoranda records such as memoranda records of installments receivable, contract memoranda records, inventory memoranda records and monthly summaries of cash and installment sales. The memoranda record of installments receivable reflected the total of installments receivable at the end of each calendar month. It was the only record maintained of Badcock's installments receivable and was not reflected in any *268 other accounting record. It was maintained principally for the purpose of determining sales policy and for credit purposes. For the latter purpose, receivables were valued at 50 per cent. The contract memoranda record book was maintained solely for the purpose of recording new accounts. Its contents were not reflected in any other record and it was not used by Badcock's in determining its net income. The inventory memoranda books were prepared semiannually and were maintained for the purposes of local tax, insurance and credit. A value attributed in these memoranda to any piece or group of merchandise was an approximation of its then worth to Badcock's. This value had no direct relation to either actual cost or actual market. The values shown were not reflected in any other accounting record used by Badcock's in determing its net income. The monthly summary of cash and installment sales was maintained solely for petitioner's personal information and was not reflected in any other accounting record or used by Badcock's in determining its net income. The respondent, in determining Badcock's net income for the years 1942 and 1943 in question, adopted the accrual method of accounting *269 using the data collected in the aforesaid memoranda books, which resulted in the deficiency in question. The respondent argues that because of the character of the business operated by Badcock's, the accrual method of accounting and the use of an inventory would more accurately reflect its annual income. We agree. Income tax laws are based on the concept that profits and losses should be allocated to their proper annual accounting periods. While, as petitioner points out, the total net income of Badcock's on the cash basis over the six-year span, i.e., 1938 to 1943, inclusive, is approximately the same as under the accrual method, it is apparent from this record that income has been assigned to a different taxable period under the cash method than it would have been under the accrual method. Petitioner contends that the respondent's failure to consider the inventory, the outstanding balance of unpaid installments and unpaid invoices as of January 1, 1942, results in a distortion of Badcock's net income for 1942. The respondent does not dispute this. Since it appears obvious that such is the result, effect will therefore be given to such balances in the computation to be made under *270 Rule 50. Petitioner also contends that the inventory memoranda maintained with respect to Badcock's did not constitute such an inventory as meets the requirements of section 22 of the Internal Revenue Code, and the Treasury rulings. We think there is merit in this contention. Since, however, they constitute the best and only inventory records available, the hardship, if any, that may result from their use must be borne by the petitioner who maintained them. Therefore we conclude that the respondent's determination that Badcock's net income for the taxable periods involved should be computed on the accrual method of accounting with the use of an inventory was a proper exercise of the discretion lodged in him by the statute. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. For use of inventories, see section 22 (c)↩.