Consolidated Naval Stores Co. v. Commissioner.
Consolidated Naval Stores Co. v. Commissioner
Docket Nos. 17167, 18892.
United States Tax Court
1950 Tax Ct. Memo LEXIS 131; 9 T.C.M. (CCH) 661; T.C.M. (RIA) 50189; August 8, 1950
E. D. Treadwell, Jr., Esq., Arcadia, Fla., and Rex Meighen, C.P.A., First National Bank Bldg., Tampa, Fla., for the petitioner. Edward L. Potter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies in the amounts of $41,322.41 and $2,560.94 for the calendar years 1943 and 1944, respectively, due to various adjustments, not all of which are in controversy in these consolidated proceedings. The sole issue as to both years is whether, in determining the ordinary gain realized or loss sustained upon the *132 sale of certain lands, the petitioner's basis is $2 per acre as urged by respondent, or $3 per acre as alleged by petitioner. Findings of Fact The petitioner, a Florida corporation with its principal office in Jacksonville, Florida, is and was engaged in business as a dealer in naval stores, timber and land. Its tax returns for the years in question were filed with the collector of internal revenue for the district of Florida. In 1943 petitioner sold 88,883.80 acres of land for a total sale price of $262,541.88 and in 1944 sold 6,402.35 acres of land for a total sale price of $20,222.12. On its tax returns petitioner reported capital gains from those sales computed on a cost basis of $2 per acre. The respondent determined that the gain returned by petitioner was ordinary income and computed deficiencies accordingly. Petitioner has not controverted respondent's determination that the gain, if any, is taxable as ordinary income, but protested that petitioner erroneously reported a basis of $2 per acre instead of an actual cost basis of $3 per acre. The above-mentioned lands were a portion of a large west Florida acreage acquired by petitioner on January 2, 1936, upon the complete *133 liquidation and dissolution of petitioner's wholly-owned subsidiary, the Florida Industrial Company, which constituted a transaction wherein no gain or loss was recognized under section 112 (b) (6) of the Revenue Act of 1936. At the time of such acquisition, those lands were entered on petitioner's books as having a cost basis of $2 per acre so as to reflect the same figure then carried on the books of the transferor, Florida Industrial Company, and which was presumed by petitioner to represent the transferor's actual cost. That figure of $2 per acre was carried on petitioner's books through the year 1944, but thereafter was changed to $3 per acre by correcting entries. The change was made on petitioner's books following an exhaustive audit which disclosed that the valuation of such land, which was originally carried on the books of Florida Industrial Company at its original cost basis of $3 per acre, had been written down to $2 per acre at the same time that the book values of other assets of that company were written down on December 31, 1930, because of the depression. In March 1925 the Florida Industrial Company acquired 277,099.39 acres of West Florida land (including the land *134 here in question) by purchase at $3 per acre from the Standard Lumber Co. which reserved for specified periods of time certain rights in regard to timber, turpentine, etc. On March 21, 1925, the Florida Industrial Co., as vendor, and Bruce L. Hoover, as vendee, entered into an executory contract of purchase and sale whereby inter alia, the vendee agreed to purchase all of the abovementioned 277,099.39 acres of land, subject to certain reserved rights as to timber, turpentine, etc., at a price of $3.75 per acre, payable in specified installments; the vendor agreed to execute warranty deeds to and deliver possession of the land to the vendee upon payment of a specified portion of the purchase price and receipt of negotiable promissory notes evidencing the unpaid balance secured by a first lien purchase money mortgage on the entire acreage; the vendor agreed to execute a conveyance or release under the mortgage (as the case might be) to portions of the land upon the vendee satisfying specified amounts of installment payments and other specified conditions under the agreement and in addition thereto making a cash payment per acre in various amounts dependent upon the year in which carried *135 out; and the parties agreed that upon the vendee's default in payments before execution of warranty deed, the vendor might terminate the agreement and retain all prior installment payments as liquidated damages and repossess the land, except as to any portion of the land theretofore paid for by and conveyed to the vendee under the agreement. During the time the purchase and sale contract remained in force, title to and possession of the land remained in the vendor. Hoover made various installment payments under the contract until the time of his default thereon in 1929, whereupon the Florida Industrial Co. filed a bill of complaint against Hoover in the United States District Court for the northern district of Florida in Equity, setting forth, inter alia, that by reason of the defendant's default the complainant elected to declare the whole of the unpaid balance of the purchase price immediately due and payable and praying that defendant be required by decree of court to pay the money due, and in default that the court enter a decree terminating and cancelling the contract of purchase and sale. The allegations of fact in the bill of complaint were admitted by defendant's answer thereto. *136 Under the terms of the contract of purchase and sale the Florida Industrial Co. was entitled to retain all installment payments made by Hoover in the principal amount of $245,250 up to the time of the default. Pursuant to other provisions of the contract and upon Hoover's making an additional cash payment of $68,474.36 in 1929, the Florida Industrial Co. released from the operation of the contract and executed a conveyance of 21,894.1 acres to Hoover. A total of $313,724.36 principal amount was paid by Hoover and retained by the Florida Industrial Co. under the terms of the contract. Subsequently, in December 1929, and upon the above-mentioned bill of complaint, the court entered its decree whereby Hoover and any parties claiming under him were foreclosed of and from all right, title and interest in the contract of March 21, 1925, and the land embraced therein at the time of such cancellation. The installment payments made by Hoover during the years prior to his default on the contract, were reported on the Florida Industrial Co.'s tax returns on the installment basis. In connection with the purchase and sale contract and the cancellation thereof in 1929, respondent determined that *137 the Florida Industrial Co. realized a profit of $188,620.04 in 1929, computed as follows: Total payments by Hoover retained
by Fla. Ind. Co
$313,724.36
Profit previously reported
on installment basis
$59,422.02
21,894.1 acres conveyed to
Hoover in 1929; cost
basis $3 per acre
65,682.30
125,104.32
Profit on repossession
$188,620.04
In September 1932, in accordance with section 606 of the Revenue Act of 1928, the Commissioner of Internal Revenue and the Florida Industrial Co. entered into a closing agreement which was approved by the Secretary of the Treasury on September 15, 1932, as to that company's tax liability for 1929 based, inter alia, upon the above-determined profit realized for that year. The land (including the land here in question) which had been subject to the abovementioned contract of purchase and sale at the time of its cancellation by court decree in December 1929, was carried on the Florida Industrial Co.'s books at the original 1925 cost basis of $3 per acre until it was written down to a book balue of $2 per acre on December 31, 1930. Thereafter, the land was carried at the latter figure on the books of the Florida Industrial *138 Co. until its assets were transferred as a liquidation distribution to petitioner on or about January 2, 1936, as above stated. Opinion KERN, Judge: From the record herein it appears that the parties are in agreement as to the evidentiary facts involved, but disagree as to the ultimate fact of whether the petitioner's basis for determining ordinary gain or loss on the sale of certain acreage in the taxable years, was $2 per acre or $3 per acre. On its tax returns petitioner used a basis of $2 per acre in reporting capital gains from the sales in question. In his deficiency notice respondent accepted the basis as reported and determined that the profits realized were taxable as ordinary gains. The petitioner challenges that determination only with respect to the basis used and alleges that it made a mistake on its tax returns and that its correct basis was $3 per acre. The parties are agreed that petitioner's acquisition of the land in question on January 2, 1936, was upon a distribution in complete liquidation of its wholly-owned subsidiary and thereby constituted a transaction wherein no gain or loss was recognized to the transferor under section 112 (b) (6) of the Revenue Act *139 of 1936 [1] and, further, that by reason thereof and the provisions of section 113 (a) (15) of that Act [2] the petitioner's basis "shall be the same as it would be in the hands of the transferor" at the time of such acquisition by petitioner. Further, the quoted provisions of the Revenue Act of 1936, in footnotes 1 and 2 also appear in identical language in similar sections of the Internal Revenue Code effective for the taxable years in which the sales in question were made. The parties are also in agreement on the fact that the petitioner's transferor first acquired the land by purchase in 1925 at a cost of $3 per acre. Thus the issue herein presented involves the question of whether the transferor acquired a new and different basis in 1929 upon the cancellation in that year of its purchase and sale contract with Hoover and under the provisions of the Revenue Act of 1928 in effect at that time. *140 The respondent contends that the transferor's basis was not the original cost to it of $3 per acre for the land in 1925, but instead was the fair market value thereof in 1929, for the reason that the Florida Industrial Co. reacquired the property in 1929 upon Hoover's defalcation on and the cancellation of the purchase and sale contract, which transaction constituted a disposition of an installment obligation in 1929 within the meaning of section 44 (d) of the Revenue Act of 1928, [3] and further, that as a result of such transaction that company's basis for gain or loss on any subsequent disposition of the property was the fair market value thereof at the time of the reacquisition in 1929, as provided by Regulations 74, Article 353 [4] as amended by T.D. 4832, approved July 19, 1938 (1938-2 C.B. 155, 156); particularly the last sentence of the second paragraph thereof. Respondent further contends that the best evidence of record of such fair market value is the figure of $2 per acre placed on the books of the Florida Industrial Co. on December 31, 1930. *141 Briefly stated, the petitioner contends that section 44 (d) has no application under the facts herein pertaining to the 1929 transaction; that the transferor's actual unrecovered cost basis was $3 per acre; and that the arbitrary write-down of that basis to $2 per acre on December 31, 1930, had no effect taxwise any more than an arbitrary write-up would have had. The facts herein show: that the Florida Industrial Co.'s executory contract of purchase and sale of land to Hoover was cancelled in 1929 pursuant to its terms because of a default by the vendee; that thereupon all the land embraced in the contract was freed of its terms and remained in the hands of the vendor which had never transferred title or possession except for 21,894.1 acres conveyed to the vendee in 1929; that for purposes of determining the Florida Industrial Co.'s income tax liability for 1929 the closing agreement executed in 1932 in effect removed the entire purchase and sale contract transaction from the installment sale method of reporting income and treated the termination of the contract in 1929 as a completed sale of 21,894.1 acres of land to Hoover for a total consideration of $313,724.36 from which there *142 was deducted the vendor's cost basis of $3 per acre or $65,682.30 and also the amount of $59,422.02 representing profit theretofore reported for tax purposes; and that the land released from the cancelled purchase and sale contract remained in the hands of the Florida Industrial Co. with an unrecovered original cost basis of $3 per acre. That treatment of the 1929 transaction for the purpose of determining the Florida Industrial Co.'s income tax liability for 1929, and its basis for any subsequent disposition of the land, was in accordance with the provisions of the second paragraph of Regulations 74, Article 353 [5] in effect at that time. *143 In Boca Ratone Co. v. Commissioner, 86 Fed. (2d) 9 (1936), where a prior year's installment sale contract was cancelled in 1929 pursuant to an agreement whereby the vendor released the vendee from further payments and paid a cash consideration for the vendee's surrender of possession and equitable ownership of the land, it was held that the 1929 transaction constituted a satisfaction of an installment obligation at other than its face value within the meaning of section 44 (d) of the Revenue Act of 1928, supra; and resulted in a loss under the provisions of that section rather than a taxable gain under Regulations 74, Art. 353. In Joseph Frost, 37 B.T.A. 190, it was held that use of the installment method of reporting income under section 44 (d) of the Revenue Act of 1928 was optional and, accordingly, not applicable for the purpose of determining gain or loss in 1930 upon the taxpayer's repossession of property theretofore sold and reported on a deferred payment plan, and further, that the forfeited payments on the repossessed properties were properly included in income for 1930 to the extent that they had not been previously reported as income. In the *144 instant case the Florida Industrial Co. elected to use the installment sale method of reporting the income from the sale made in 1925, but such method was wholly abandoned in 1929, upon that company's cancellation of the contract of sale and repossession of the vendee's equitable ownership, and the payments retained by that company were included in its taxable income for 1929, except for adjustments as heretofore mentioned. This was done by the closing agreement, between the Florida Industrial Co. and the Commissioner, which taxwise placed the company in the position of having an unrecovered cost basis of $3 per acre for the land repossessed in 1929. For tax purposes that taxpayer's rights were fixed by the closing agreement which was final and conclusive, and may not now be disregarded. Cramp Shipbuilding Co., 14 T.C. 33; Commissioner v. Ingram, 87 Fed. (2d) 915, affirming 32 B.T.A. 1063., and Commissioner v. Yates, 86 Fed. (2d) 748, affirming 32 B.T.A. 1337. Accordingly, on this record, we conclude that the land involved herein had a cost basis of $3 per acre in the hands of the Florida Industrial Co., for determining *145 gain or loss upon its disposition thereof in a taxable transaction, without regard to the 1929 fair market value of that property. Cf. Johnson v. Commissioner, 162 Fed. (2d) 844, affirming in part 7 T.C. 465. Since the Florida Industrial Co. was the petitioner's transferor in a tax-free transaction, the petitioner stands in the same position as that company, Orange Securities Corp., 45 B.T.A. 24, affd. 131 Fed. (2d) 662. We hold that petitioner's basis for determining gain or loss on the sale of the land in question during the taxable year, was $3 per acre. The respondent erred in his determination. Decision will be entered under Rule 50. Footnotes
1. REVENUE ACT OF 1936: SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind. - * * *
(6) Property Received by Corporation on Complete Liquidation of Another. - No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * * * ↩
2. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(15) Property Received by a Corporation on Complete Liquidation of Another. - If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112 (b) (6), then the basis shall be the same as it would be in the hands of the transferor. * * *↩
3. REVENUE ACT OF 1928: SEC. 44. INSTALLMENT BASIS. * * *
(d) Gain or loss upon disposition of installment obligations. - If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange - the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange - the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. ↩
4. REGULATIONS 74 (as amended by T.D. 4832) Art. 353. Sale of real property on installment plan. - In transactions included in class (1) in article 352 the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price. If the purchaser defaults in any of his payments, and the vendor returning income on the installment basis reacquires the property sold, whether title thereto had been retained by the vendor or transferred to the purchaser, gain or loss for the year in which the reacquisition occurs is to be computed upon any installment obligations of the purchaser which are satisfied or discharged upon the reacquisition or are applied by the vendor to the purchase or bid price of the property. Such gain or loss is to be measured by the difference between the fair market value of the property reacquired (including the fair market value of any fixed improvements placed on the property by the purchaser) and the basis in the hands of the vendor of the obligations of the purchaser which are so satisfied, discharged, or applied, with proper adjustment for any other amounts realized or costs incurred in connection with the reacquisition. (See also article 355.) The basis in the hands of the vendor of the obligations of the purchaser satisfied, discharged, or applied upon the reacquisition of the property will be the excess of the face value of such obligations over an amount equal to the income which would be returnable were the obligations paid in full. No deduction for a bad debt shall in any case be taken on account of any portion of the obligations of the purchaser which are treated by the vendor as not having been satisfied, discharged, or applied upon the reacquisition of the property, unless it is clearly shown that after the property was reacquired the purchaser remained liable for such portion; and in no event shall the amount of the deduction exceed the basis in the hands of the vendor of the portion of the obligations with respect to which the purchaser remained liable after the reacquisition. (See article 191.) If the property reacquired is bid in by the vendor at a foreclosure sale, the fair market value of the property shall be presumed to be the purchase or bid price thereof in the absence of clear and convincing proof to the contrary. If the property reacquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of reacquisition (including the fair market value of any fixed improvements placed on the property by the purchaser). (Italics supplied).↩
5. Regulations 74 (prior to amendment). Art. 353. Sale of real property on installment plan. * * *
If for any reason the purchaser defaults in any of his payments, and the vendor returning income on the installment basis repossesses the property, the entire amount received in installment payments and retained by the vendor, less the sum of the profits previously returned as income and an amount representing proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property while in the hands of the purchaser, will be income of the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the installment sale.↩